UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER S.,

                    Plaintiff,

         v.

NANCY A. BERRYHILL,

                    Defendant.

Case No. C18-5314JLR

ORDER REVERSING AND
REMANDING DENIAL OF
BENEFITS

## I.    INTRODUCTION

Plaintiff Christopher S. seeks review of the denial of his application for

supplemental security income ("SSI") benefits.  (*See* Pl. Op. Br. (Dkt. # 11) at 1.)

Plaintiff contends the Administrative Law Judge ("ALJ") erred by (1) improperly

rejecting Plaintiff's symptom testimony; (2) improperly rejecting the opinions of Brenda

Grant, M.D.; (3) improperly rejecting parts of the opinions of Kathleen Mayers, Ph.D.;

(4) improperly rejecting the opinions of Scott Alvord, Psy.D.; and (5) improperly

assessing Plaintiff's residual functional capacity ("RFC") and ability to work.  (*Id.*)  As

discussed below, the court REVERSES the final decision of Defendant Nancy A.

Berryhill, Deputy Commissioner of the Social Security Administration for Operations

(the "Commissioner"), and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

**A.    Procedural History**

This is the second time this case is before the court. Plaintiff protectively filed an application for SSI on June 25, 2012.[1] (*See* Admin. Record ("AR") (Dkt. # 9) at 919.) Plaintiff originally alleged a disability onset date of August 1, 2007, but amended it to June 25, 2012. (*See id.*) His claims were denied on initial administrative review and on reconsideration. (*See id.* at 88-102, 107-31.) ALJ Rebekah Ross subsequently held a hearing on Plaintiff's claims. (*See id.* at 39-87.)

On January 16, 2014, ALJ Ross issued a decision finding Plaintiff not disabled. (*See id.* at 22-31.) The Appeals Council denied review. (*Id.* at 1-4.) Plaintiff sought relief in this court. (*See id.* at 1030-32.)

On January 12, 2016, pursuant to a stipulation from the parties, Magistrate Judge Karen L. Strombom entered an order reversing the Commissioner's decision and remanding the matter for further administrative review. (*Id.* at 1033-34.) On remand, the ALJ was instructed to update the medical record and provide Plaintiff an opportunity for a new hearing; evaluate evidence that had been submitted to the Appeals Council after ALJ Ross's January 2014 decision; reevaluate Plaintiff's impairments at step two of the

---

[1] Plaintiff also filed an application for disability insurance benefits, but agreed to dismiss that claim when he amended his onset date to after his date last insured. (*See* AR at 919.)

disability evaluation process; reevaluate medical opinions from Dr. Mayers and Dr. Grant; reevaluate Plaintiff's RFC; reevaluate Plaintiff's symptom testimony; take additional testimony from a vocational expert as needed; and issue a new decision. (*Id.*)

On May 8, 2017, ALJ Joanne Dantonio conducted a second hearing,[2] during which she took testimony from Plaintiff and a vocational expert. (*See id.* at 949-88.) ALJ Dantonio issued a decision on January 23, 2018, in which she found that Plaintiff had not been under a disability, as defined in the Social Security Act (the "Act"), since June 25, 2012, the alleged disability onset date. (*Id.* at 919-38.)

**B.   The ALJ's Decision**

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:**  Plaintiff has not engaged in substantial gainful activity since June 25, 2012, the application date. *See* 20 C.F.R. § 416.971 *et seq.*

**Step two:**  Plaintiff has the following severe impairments: left knee Osgood-Schlatter disease; right shoulder rotator cuff tear status post two surgical reports; lumbar facet arthropathy; migraines; brain cyst; mild neurocognitive disorder; obesity; and hand eczema. *See* 20 C.F.R. § 416.920(c).

**Step three:**  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925 & 416.926.

**Residual Functional Capacity:**  Plaintiff can perform sedentary work, except that he is limited to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently.  He can never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and balance; never crawl or kneel; never reach overhead with the right

---

[2]  Plaintiff and his attorney appeared for a hearing on November 28, 2016, but the hearing was postponed to further develop the record. (*See* AR at 920, 989-1000.)

[3]  20 C.F.R. § 416.920.

arm; frequently push/pull with the right arm; occasionally use foot controls; frequently handle and finger; have no hand exposure to harsh chemicals; and have no more than occasional exposure to dangerous machinery, unprotected heights, harsh chemicals and fumes, or high-impact vibrations. He needs to be able to use a cane in one hand when walking; sit for two hour increments; and stand/walk for no more than 30 minutes at one time. He can do simple, routine tasks; have occasional contact with the public; and less than occasional changes in work tasks. He needs to wear latex or cotton gloves while working.

**Step four:** Plaintiff has no past relevant work. *See* 20 C.F.R. § 416.965.

**Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 416.969 & 416.969(a). Therefore, Plaintiff was not under a disability as defined in the Act, since June 25, 2012. *See* 20 C.F.R. § 416.920(g).

(AR at 919-38.) The Appeals Council did not assume jurisdiction of the case, nor did Plaintiff file written exceptions to the ALJ's decision within 60 days of the ALJ's decision. (*See generally* AR.) The ALJ's decision thus became the Commissioner's final decision. *See* 20 C.F.R. § 416.1484(d).

### III. ANALYSIS

Plaintiff, as the claimant, bears the burden of proving he is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may set aside a denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the court is required to examine the entire record,

it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.     The ALJ Erred in Evaluating Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ harmfully erred in evaluating his symptom testimony. (Pl. Op. Br. at 12-15.) The court agrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could reasonably be expected to cause some of the symptoms he alleged. (AR at 929.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885

F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Briefly, the Commissioner contends that the ALJ found evidence of malingering, which would obviate the need to provide further reasons for discounting Plaintiff's testimony. (*See* Def. Resp. Br. (Dkt. # 15) at 4-5.) The mere fact that an ALJ mentions evidence that could support a finding of malingering, but does not affirmatively find that the evidence shows the claimant was malingering, cannot support rejection of the claimant's testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). Moreover, the ALJ did not find that Plaintiff was malingering; she stated only that orthopedist Ryan Halpin, M.D., could not explain two of Plaintiff's symptoms, and noted that this "suggest[ed] the possibility of exaggeration." (AR at 931.) This vague statement did not relieve the ALJ of her obligation to provide clear and convincing reasons for why she was rejecting Plaintiff's testimony.

Although the ALJ did not determine that Plaintiff was malingering, she nonetheless rejected Plaintiff's testimony. (AR at 929.) The ALJ gave five reasons for this determination: (1) Plaintiff's symptom testimony was inconsistent with the objective medical evidence; (2) he did not follow up with treatment recommendations; (3) his

testimony was inconsistent with his daily activities; (4) Plaintiff left his previous employment for non-disability-related reasons; and (5) his testimony was vague and inconsistent.  (*Id.* at 929-31.)

Plaintiff focuses on two claims from his testimony that the ALJ rejected, and argues that the ALJ was required to provide clear and convincing reasons specific to these claims when rejecting them.  (*See* Pl. Op. Br. at 13.)  But the Ninth Circuit's standards allow for a more general determination.  Once an ALJ has identified specific evidence that contradicts specific parts of the claimant's testimony, the Ninth Circuit permits the ALJ to make a more general credibility assessment based on the contradiction or any other specific, clear, and convincing reason.  *See, e.g.*, *Thomas*, 278 F.3d at 960 ("[T]he ALJ properly rejected [claimant's] testimony by . . . providing a specific, clear and convincing reason . . . that her testimony was generally not credible . . . ."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.").[4]  The court will thus address each of the ALJ's given reasons for rejecting Plaintiff's symptom testimony as they relate to Plaintiff's entire testimony.

1.  <u>Inconsistency with Objective Medical Evidence</u>

The ALJ's first reason for discounting Plaintiff's testimony fails.  An ALJ may

---

[4]  These cases remain good law even though the Social Security Administration ("SSA") has since issued Social Security Ruling 16-3p, 2017 WL 5180304 (2017), which removed the term "credibility" from the SSA's sub-regulatory policy and clarified the standards by which the SSA would assess a claimant's testimony.  *See Trevizo*, 871 F.3d at 678 n.5.

reject a claimant's testimony when it is contradicted by the medical evidence, but "'may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.'" *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)); *see also* 20 C.F.R. § 416.929(c)(2). This is so because "pain is subjective and not susceptible to measurement by reliable techniques." *Moses v. Barnhart*, 33 F. App'x 888, 889 (9th Cir. 2002).

The medical evidence the ALJ relied on here showed only an absence of objective findings; it did not contradict Plaintiff's pain complaints. The ALJ focused this portion of her analysis on Plaintiff's back, knee, and shoulder pain. (*See* AR at 929.) She noted that imaging of Plaintiff's back and left knee "was very mild." (*Id.*) The ALJ further commented that the objective findings on several physical examinations were "unremarkable." (*Id.* at 929.) But pain cannot be imaged, and these findings did not directly contradict Plaintiff's complaints about his symptoms or pain. The ALJ therefore erred in rejecting Plaintiff's symptom testimony on this basis.

2.    Failure to Follow Treatment Recommendations

The ALJ next discredited Plaintiff's symptom testimony because she determined that Plaintiff failed to follow up with referrals to a neurologist and a dermatologist, suggesting that his symptoms were not as severe as claimed. (*See id.* at 929, 931.) The ALJ erred in doing so. First, the ALJ's determination is not supported by substantial evidence in the record. Although the record does not include medical records from a

dermatologist, Plaintiff reported to his primary care doctor that he saw a dermatologist. (*See id.* at 1357, 1367.) Second, Plaintiff continued to receive treatment and medication for his conditions, so whether he saw a specialist or not is beside the point. (*See, e.g.*, *id.* at 63, 1317, 1322, 1329, 1352, 1356, 1372.) Plaintiff did not fail to seek treatment; at most, he simply received it from a less-specialized doctor. That is not a legitimate reason to disbelieve him. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

3. <u>Inconsistency with Daily Activities</u>

The ALJ further rejected Plaintiff's symptom testimony because she found it inconsistent with his daily activities. (AR at 930.) She primarily relied on Plaintiff's statements to Gary Gaffield, D.O. during a consultative examination. (*See id.*) Dr. Gaffield reported that Plaintiff handled his own personal care, prepared food, did "light household chores," took care of his 10-month-old child, and got his girlfriend off to work. (*Id.* at 1390.)

An ALJ may consider a claimant's daily activities in assessing his testimony. *See Fair*, 885 F.2d at 603. But daily activities that do not contradict a claimant's testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Moreover, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly

incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

Much of the ALJ's discussion here focused on activities that are nothing more than the basic elements of a normal life, such as Plaintiff's ability to bathe, dress, and feed himself. (*See* AR at 930.) The only activity that could possibly support the ALJ's conclusion was Plaintiff's taking care of his infant child. (*See id.*) But this is based on a single vague reference in the record—Dr. Gaffield's note from January 2017 that Plaintiff "[t]akes care of the infant." (*See id.* at 930, 1390.) While the ALJ is entitled to resolve ambiguities in the evidence, she must provide clear and convincing reasons to reject Plaintiff's testimony, and reference to one ambiguous statement about Plaintiff "tak[ing] care of" his child does not satisfy this standard. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). The ALJ therefore erred in rejecting Plaintiff's testimony based on his daily activities.

### 4. Leaving Work for Non-Disability-Related Reasons

The ALJ next rejected Plaintiff's testimony because she determined that he "left his previous employment for reasons unrelated to his impairments." (AR at 930.) This was not a legitimate reason supported by substantial evidence in the record to reject Plaintiff's testimony.

The ALJ pointed to two jobs Plaintiff left as support for this reason. First, the ALJ noted that Plaintiff quit one job "because he was told someone did not like him." (*Id.*) In fact, Plaintiff testified that he was given the choice to quit or be fired from a job, and believed the reason was either that someone did not like him, or that he was not adequately performing the job. (*See id.* at 50-51.) The evidence does not indicate whether this was related to his disability, so the ALJ could not reasonably rely on Plaintiff's departure from this job to discount his testimony.

In the second situation the ALJ referenced, Plaintiff stopped a job because it was seasonal employment. (*Id.* at 930.) Nothing about this fact undercuts Plaintiff's testimony. That job ended in 2004, well before the alleged disability period. (*See id.* at 51-52, 291, 966.) Plaintiff worked after that job ended. (*See id.* at 291-92, 295.) The ALJ could not reasonably infer anything about Plaintiff's motivations from such generic facts, and thus erred in rejecting Plaintiff's symptom testimony on this basis. *Cf. Robbins*, 466 F.3d at 884 (rejecting ALJ's adverse credibility determination where it was not adequately corroborated or explained).

5.      Vague and Inconsistent Testimony

Finally, the ALJ rejected Plaintiff's symptom testimony because it was "very vague and inconsistent." (AR at 930.) The ALJ's reasoning here fails in part because it does not accurately reflect the record. For example, the ALJ represented that Plaintiff told Dr. Gaffield he helped his girlfriend get off to work, "and was very busy thereafter with housework and childcare." (*Id.*) But Dr. Gaffield's report suggests far less activity.

Plaintiff said he "[d]oes light household chores," "[s]its around until lunch" after getting his girlfriend off to work, and watches television after lunch. (*Id.* at 1390.) Dr. Gaffield reported that Plaintiff takes care of his daughter, but Plaintiff testified that this mostly involves watching her play on the floor or holding her on his lap while they watch cartoons. (*See id.* at 978.)

The ALJ noted other vague statements Plaintiff made, but even accepting the ALJ's analysis, it is not enough to overcome her other errors. *See Burrell*, 775 F.3d at 1140. The ALJ thus erred in rejecting Plaintiff's subjective symptom testimony.

      6.    <u>Harmful Error</u>

The ALJ's errors in evaluating Plaintiff's testimony must be considered harmful. The court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the [improperly rejected evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The court cannot state with certainty that the ALJ would have reached the same result had she fully credited Plaintiff's testimony, and thus her errors were harmful.

**B.    The ALJ Erred in Rejecting the Opinions of Dr. Grant**

Plaintiff contends that the ALJ erred in rejecting the opinions of his treating physician, Dr. Grant. (Pl. Op. Br. at 4-10.) The court agrees.

To reject the opinions of a treating doctor that are contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the

record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The court may also draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

Dr. Grant was one of Plaintiff's treating physicians. (*See, e.g.*, AR at 637-40, 693-714.) She produced three medical source statements that the ALJ considered. (*See id.* at 913-15, 1247-53, 1452-54.) The ALJ addressed each statement separately, and the court will do the same.

1.     The ALJ Erred in Rejecting Dr. Grant's 2014 Opinions

On January 29, 2014, Dr. Grant completed a physical functional assessment form evaluating Plaintiff's work abilities. (*See id.* at 913-15.) In that form, Dr. Grant opined that in a normal eight-hour work day, Plaintiff could sit for one hour; stand and walk for less than one hour; lift zero to five pounds for one hour; carry no amount of weight for any time; reach for 45 minutes; handle for two hours; finger for 45 minutes; and feel for 45 minutes. (*Id.* at 913-14.) Dr. Grant opined that Plaintiff would be off task for more than 30 percent of the normal work day due to migraines, right shoulder pain, and hand pain. (*Id.* at 915.) Dr. Grant further commented that Plaintiff had "a skin condition that limit[ed] his ability to use his hands significantly," and "requires a cane to prevent falls

due to limited balance." (*Id.*)

The ALJ gave Dr. Grant's 2014 opinions no weight. (*Id.* at 933.) The ALJ gave three reasons for this conclusion. First, she found that Dr. Grant's opinions were "grossly out of proportion with her unremarkable treatment notes reflecting that appointments were mainly for medication refills." (*Id.*) Second, the ALJ noted that Dr. Grant's treatment notes "do not mention any problems with attention or concentration," while Dr. Mayers, who specifically tested Plaintiff's cognitive abilities, found that Plaintiff's concentration was generally good. (*Id.*) Third, the ALJ stated that Dr. Grant's conclusion that Plaintiff would miss five or more days of work per month due to migraines was unsupported by her treatment notes, which documented at most five complaints of migraines in all of 2013. (*Id.*)

The ALJ's first reason for rejecting Dr. Grant's 2014 opinions fails because the ALJ inaccurately paraphrased Dr. Grant's treatment records. When evaluating medical evidence, an ALJ must present a rational and accurate interpretation of that evidence. *See Reddick*, 157 F.3d at 722-23 (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). Dr. Grant's treatment notes indicate that one purpose for some of Plaintiff's office visits was to document Plaintiff's receipt of medication refills. (*See, e.g.*, AR at 1276, 1285-86, 1289, 1292-93, 1299.)[5] There are ample treatment notes in the record indicating that Plaintiff

---

[5] These do not appear to be actual medical appointments. They look to be nothing more than documentation that Plaintiff picked up his prescriptions, as many report merely that "[p]atient comes to clinic for Rx pick up." (*See, e.g.*, *id.*)

received ongoing treatment for his physical impairments, though. (*See, e.g.*, *id.* at 1273, 1277-79, 1283-84, 1287-88, 1290-91.) The ALJ's first reason for rejecting Dr. Grant's 2014 opinions was thus not supported by substantial evidence in the record.

The ALJ's second reason, which related only to Dr. Grant's opinions on Plaintiff's attention and concentration, withstands scrutiny. One factor an ALJ may consider in weighing a doctor's opinions is how well they are supported or explained. *See* 20 C.F.R. § 416.927(c)(3); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In support of her opinion that Plaintiff would be off task for more than 30 percent of a normal work day, Dr. Grant stated only that this would occur because of Plaintiff's migraines, right shoulder pain, and hand pain. (*See* AR at 915.) Dr. Grant's treatment notes mention these conditions, but do not provide an explanation as to how Dr. Grant reached her opinion.

The ALJ's third reason, which related to Dr. Grant's opinion that Plaintiff would miss five days of work per month due to migraines, fails. The ALJ claimed that Dr. Grant's treatment notes show Plaintiff "complained of migraines at most [five] times total for 2013." (*Id.* at 933.) But limiting the scope to 2013 fails to tell the whole story, and even then Plaintiff reported headaches and migraines more than just five times in that year. (*See, e.g.*, *id.* at 693, 699-700, 703-07, 860, 864, 866, 872.) Moreover, the ALJ's statement that "there is little to no objective evidence supporting migraines" ignores that migraines are not the type of condition that can be objectively measured. *See Hansen v. Colvin*, No. 15-CV-00190-REB, 2016 WL 4582041, at *4 (D. Idaho Sept. 1, 2016)

(holding that "it is error to require objective evidence for conditions (like fibro-myalgia or migraine) that elude precise measurement"); *Dalley v. Comm'r of Soc. Sec.*, No. C 00-01687 VRW, 2006 WL 2578269, at *7 (N.D. Cal. Sept. 6, 2006) ("[M]igraine headaches are a common malady that are readily diagnosed through the evaluation of symptoms. . . . No diagnostic tests are useful, except to exclude other causes."). The ALJ therefore erred in rejecting Dr. Grant's opinion on Plaintiff's absenteeism due to migraines.

Although one of the ALJ's reasons for rejecting Dr. Grant's 2014 opinions withstands scrutiny, she nonetheless committed harmful error in rejecting those opinions. *See Burrell*, 775 F.3d at 1140. The court cannot say with certainty that the ALJ would have reached the same nondisability determination had she properly evaluated this evidence, and thus the ALJ harmfully erred. *See Stout*, 454 F.3d at 1055-56.

### 2. The ALJ Erred in Rejecting Dr. Grant's 2016 Opinions

Dr. Grant completed a physical functional evaluation on July 8, 2016. (*See* AR at 1247-53.) Dr. Grant diagnosed Plaintiff with chronic low back pain, right shoulder pain, left hip and knee pain, and impaired memory. (*See id.* at 1248.) Dr. Grant opined that Plaintiff was unable to perform basic work activities involving sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching, largely due to his chronic low back pain. (*Id.*) Dr. Grant further opined that Plaintiff was unable to perform basic work activities involving seeing, hearing, and communicating due to his impaired memory. (*Id.*)

The ALJ rejected Dr. Grant's 2016 opinions because she found them "inconsistent with the objective evidence and with the examinations and opinions of examining physicians and specialists." (*Id.* at 933.) The ALJ further reasoned that "no examination was done to support the opinion," and Dr. Grant's treatment notes suggested that Plaintiff's limitations were largely based on his subjective complaints. (*Id.*)

The ALJ's first reason fails. An ALJ must do more than state that a treating physician's opinion is inconsistent with the evidence and other medical opinions; she must discuss the evidence and explain why her interpretations of it are correct. *See Garrison*, 759 F.3d at 1012-13. It is not the job of the reviewing court to comb the administrative record to find specific inconsistencies or conflicts. *Burrell*, 775 F.3d at 1138.

The ALJ's second reason—that Dr. Grant did not perform an examination to support her opinion—has no merit. Dr. Grant was Plaintiff's treating physician; she examined him on multiple occasions. (*See, e.g.*, AR at 637, 639, 641, 697, 701, 703, 1274, 1279, 1283-84, 1287, 1291.) The ALJ thus erred.

The ALJ's third reason—that Dr. Grant's treatment notes indicated her opinions were largely based on Plaintiff's subjective complaints—is once again too vague and inaccurate to withstand scrutiny. The only fact the ALJ pointed to in support of her reasoning was that Plaintiff was regularly "alert and in no acute distress" during Dr. Grant's examinations. (*See id.* at 934.) But Plaintiff had plenty of other notable symptoms, many of which Dr. Grant reported observing, such as skin problems on his

hands (*see, e.g.*, *id.* at 705, 868, 870, 874), headaches and decreased memory (*see, e.g.*, *id.* at 699, 703, 705, 709, 711, 713, 883), and his use of a cane to walk (*see, e.g.*, *id.* at 700, 704, 709, 711, 864, 881). The ALJ's conclusion that Dr. Grant's opinions were largely based on Plaintiff's subjective reports was thus not supported by substantial evidence in the record, meaning the ALJ erred. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Moreover, the ALJ misevaluated Plaintiff's testimony, *see supra* § III.A, so she could not reject Dr. Grant's opinions because they were based on Plaintiff's reports. *See Drawn v. Berryhill*, 728 F. App'x 637, 640 (9th Cir. 2018).

The ALJ's errors here were harmful. Had she properly addressed Dr. Grant's 2016 opinions, the ALJ may have reached a different disability determination. *See Stout*, 454 F.3d at 1055-56.

3.    The ALJ Erred in Rejecting Dr. Grant's 2017 Opinions

Dr. Grant completed another physical functional assessment form on April 7, 2017. (*See* AR at 1453-54.) This time, Dr. Grant opined that in a normal eight-hour work day, Plaintiff could sit for 30 minutes at a time, for a total of two hours; stand for 30 minutes at a time, for a total of two hours; needed to be able to shift from sitting to standing and back at will; needed to walk for five minutes every hour; and would need three to four unscheduled breaks, lasting about five minutes. (*Id.* at 1453.) Dr. Grant opined that Plaintiff would be off task 10 percent of the time due to confusion and memory loss, and would miss five days or more per month. (*Id.* at 1454.)

The ALJ once again gave Dr. Grant's opinions no weight. (*Id.* at 933.) The ALJ

again reasoned that Dr. Grant's opinions had "little basis" because she "did not do an in depth [sic] examination." (*Id.*)  Just as with Dr. Grant's 2016 opinions, this reason has no merit.  *See supra* § III.B.2.  Dr. Grant was Plaintiff's treating physician.  She saw him on many occasions, and regularly examined him.  (*See, e.g.*, AR at 637, 639, 641, 697, 701, 703, 1274, 1279, 1283-84, 1287, 1291.)  She had ample basis on which to opine about Plaintiff's impairments.

The ALJ further rejected Dr. Grant's 2017 opinions because they were inconsistent with the other objective examinations and medical opinions in the record. (*Id.* at 933.)  This reason was insufficient with respect to Dr. Grant's 2016 opinions, and it is insufficient here.  *See supra* § III.B.2.

Relying on yet another reason she gave for rejecting Dr. Grant's 2016 opinions, the ALJ also rejected Dr. Grant's 2017 opinions because they were inconsistent with her own treatment notes.  (AR at 933.)  Again, this reason is too vague and inaccurate to survive.  *See supra* § III.B.2.

Finally, the ALJ rejected Dr. Grant's 2017 opinions because they were "completely contradictory to the claimant's report of significant daily activities."  (AR at 933.)  Once again, the ALJ vastly overstated the evidence regarding Plaintiff's daily activities.  *See supra* § III.A.3.  The evidence indicates largely sedentary daily activities, and the ALJ has not given any specifics as to which activities supposedly contradict Dr. Grant's 2017 opinions.

The ALJ's errors regarding Dr. Grant's 2017 opinions must once again be deemed

harmful.  Had the ALJ appropriately evaluated these opinions, her nondisability

determination may have been different.  *See Stout*, 454 F.3d at 1055-56.

**C.     The ALJ Erred in Rejecting Portions of Dr. Mayers's Opinions**

Plaintiff contends that the ALJ erred in rejecting portions of Dr. Mayers's

opinions.  (Pl. Op. Br. at 10-11.)  In particular, Plaintiff argues that the ALJ erred in

rejecting Dr. Mayers's opinions that Plaintiff's "pain and medication could interfere with

his ability to maintain attention and concentration through a normal eight-hour workday,"

and that he could not manage his own funds.  (AR at 659.)  The court agrees.

Dr. Mayers examined Plaintiff on March 27, 2012.  (AR at 655.)  She reported that

Plaintiff had a poor memory, limited fund of information, good concentration for

three-stage directions, poor math skills, fair spelling skills, fair abstract thinking abilities,

fairly good judgment, and fair insight.  (*Id.* at 657.)  Dr. Mayers further reported that

Plaintiff's "concentration and task persistence were average," but "[h]is pace was very

slow."  (*Id.* at 658.)  Dr. Mayers opined that Plaintiff was "capable of understanding,

remembering and carrying out three-stage instructions," and "able to interact with others

in a work setting."  (*Id.* at 659.)  She further opined that Plaintiff's pain and medication

"could interfere with his ability to maintain attention and concentration through a normal

eight-hour workday."  (*Id.*)  Lastly, Dr. Mayers opined that Plaintiff could not manage his

own funds.  (*Id.*)

The ALJ gave significant weight to portions of Dr. Mayers's opinions, but gave no

weight to her opinions that Plaintiff's pain and medication could interfere with Plaintiff's

ability to maintain concentration and persistence in a normal work day, and that Plaintiff could not manage his own funds. (*Id.* at 933-34.) The ALJ reasoned that these opinions were inconsistent with Plaintiff's daily activities, and inconsistent with the overall medical record. (*Id.* at 934.) Neither reason survives scrutiny.

The ALJ's first reason for rejecting Dr. Mayers's concentration and persistence opinion fails. A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the doctor's opinion. *See Rollins*, 261 F.3d at 856. But there is no obvious inconsistency here. The fact that Plaintiff could use a computer, play video games, or watch television for some undetermined amount of time does not conflict with a finding that he could not concentrate or persist in performing work activities for an entire eight-hour work day. This was thus not a specific and legitimate reason to discount Dr. Mayers's concentration and persistence opinion.

The ALJ's second reason also fails. Just like her rejection of Dr. Grant's 2016 opinions, the ALJ's discussion here was insufficient. *See supra* § III.B.2. The ALJ did not identify inconsistencies in the medical record; she just said that they existed. (*See id.* at 934.) The ALJ thus erred. *See Garrison*, 759 F.3d at 1012; *Burrell*, 775 F.3d at 1138.

As with Plaintiff's testimony and Dr. Grant's opinions, the ALJ committed harmful error in rejecting portions of Dr. Mayers's opinions. Had the ALJ properly assessed Dr. Mayers's opinions, she may have reached a different decision. *See Stout*, 454 F.3d at 1055-56.

**D.      The ALJ Erred in Rejecting Dr. Alvord's Opinions**

Plaintiff contends that the ALJ erred in rejecting Dr. Alvord's opinions.  (Pl. Op. Br. at 11-12.)  The court agrees.

Dr. Alvord examined Plaintiff on January 3, 2017.  (AR at 1379.)  Dr. Alvord opined that Plaintiff could perform simple, repetitive tasks, but would have moderate to severe difficulty performing detailed and complex tasks.  (*Id.* at 1383.)  Dr. Alvord further opined that Plaintiff would have moderate to severe difficulty accepting instructions from supervisors; interacting with coworkers and the public; performing work activities on a consistent basis without special accommodations; maintaining regular attendance; completing a normal work day or week without interruptions from his psychiatric conditions; and dealing with normal workplace stresses.  (*Id.*)

The ALJ gave Dr. Alvord's opinions "some weight."  (*Id.* at 934.)  The ALJ rejected Dr. Alvord's opinions on social functioning, concentration, and performing work on a regular basis because they were inconsistent with Plaintiff's daily activities and with Dr. Mayers's opinions.  (*Id.* at 935.)  The ALJ erred in doing so.  First, as with Dr. Mayers, Plaintiff's daily activities as established by the record were not inconsistent with Dr. Alvord's opined limitations.  *See supra* § III.C.  Second, the fact that two medical opinions are inconsistent is not in and of itself a reason to dismiss one of those opinions. The ALJ is entitled to weigh competing medical opinions, but must explain why she chooses to credit one over the other.  *See Holohan*, 246 F.3d at 1202.  Here, she has simply stated that she made a choice, but not why.  The ALJ thus erred in rejecting this

portion of Dr. Alvord's opinions.

The ALJ also discounted Dr. Alvord's opinions regarding Plaintiff's attendance, ability to complete a normal work week, and ability to deal with social stresses. (AR at 935.) The ALJ gave four reasons for this: (1) Dr. Alvord's opinions conflicted with those of Dr. Mayers and Dr. Gaffield; (2) Dr. Alvord's opinions were inconsistent with Plaintiff's daily activities; (3) Dr. Alvord based these opinions on his consideration of Plaintiff's physical impairments, which was not the focus of this examination; and (4) Dr. Alvord's opinions on Plaintiff's social limitations were inconsistent with the other evidence in the record and on examination. (*Id.*)

The ALJ's first reason is not a reason at all but a statement of choice. Again, the ALJ may accept one medical opinion over another, but must give specific and legitimate reasons for doing so. *See Holohan*, 246 F.3d at 1202. That Dr. Alvord's opinions were inconsistent with those of Dr. Gaffield and Dr. Mayers says nothing about the validity of any of those opinions, and is thus not a specific and legitimate reason for the ALJ to discount Dr. Alvord's opinions.

The ALJ's second reason for rejecting Dr. Alvord's opinions on attendance and handling workplace stress also fails. As previously explained, the ALJ inaccurately represented what the evidence revealed about Plaintiff's daily activities. *See supra* §§ III.A.3. III.B.3, III.C. She thus erred in rejecting Dr. Alvord's opinions on this basis.

The ALJ's third reason for discounting Dr. Alvord's opinions is not supported by substantial evidence. Dr. Alvord documented Plaintiff's reports of physical limitations,

but nothing in his report indicates that his ultimate opinions on Plaintiff's mental capabilities were based on those physical limitations. (*See* AR at 1379-83.) To the contrary, Dr. Alvord focused his discussion on Plaintiff's psychiatric and cognitive impairments. (*See id.* at 1383.) The ALJ erred to the extent she discounted Dr. Alvord's opinions for being based on Plaintiff's physical limitations.

Finally, the ALJ erred in rejecting Dr. Alvord's opinions as inconsistent with other evidence in the record. As the court has stated throughout this opinion, the ALJ must identify with specificity inconsistencies between a doctor's opinion and the overall medical evidence; the court will not search the record for them. *See Garrison*, 759 F.3d at 1012; *Burrell*, 775 F.3d at 1138.

The ALJ's errors were once again harmful. The court cannot confidently conclude that the ALJ would have reached the same outcome had she properly considered Dr. Alvord's opinions. *See Stout*, 454 F.3d at 1055-56.

**E.     The ALJ Erred in Assessing Plaintiff's RFC and Ability to Work**

Plaintiff last contends that the ALJ erred in his RFC determination, and consequently erred in basing her findings at step five on that RFC. (Pl. Op. Br. at 15.) This argument is derivative of his other arguments, as Plaintiff contends that the ALJ's errors in assessing the evidence deprived her RFC finding of substantial evidentiary support. (*See id.*) Because the court has found that the ALJ erred in evaluating Plaintiff's symptom testimony, Dr. Grant's opinions, portions of Dr. Mayers's opinions, and Dr. Alvord's opinions, *see supra* §§ III.A-.D, the court agrees that the ALJ erred in

his RFC determination, and in basing his findings at step five on that RFC. *See Robbins*, 466 F.3d at 885 (holding that the ALJ's RFC determination was not supported by substantial evidence where he failed to properly account for all of the evidence).

## F.    Scope of Remand

Plaintiff asks the court to remand for an award of benefits. (Pl. Op. Br. at 16.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. While the first step of the Ninth Circuit's framework has been met, the second and third have not. There are conflicts in the medical evidence that the court is not in a position to decide. *See Andrews*, 53 F.3d at 1039. For example, Dr. Grant, Dr. Gaffield, and consulting doctor Norman Staley, M.D., differ in their opinions as to Plaintiff's physical limitations. (*See* AR at 125-28, 913-14, 1248-49, 1394-99, 1453.) Similarly, Dr. Mayers and Dr. Alvord have differing opinions as to the severity of Plaintiff's mental limitations. (*See id.* at 659, 1383.) Without resolution of these evidentiary conflicts, the court cannot conclude that the ALJ would be required to find Plaintiff disabled here. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than to remand for the payment of benefits, where the record revealed conflicts, ambiguities, or gaps in the evidence).

On remand, the ALJ must reevaluate Plaintiff's symptom testimony, reevaluate Dr. Grant's opinions, reevaluate Dr. Mayers's opinions, and reevaluate Dr. Alvord's opinions. The ALJ must reassess Plaintiff's RFC and findings at step five, and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

//

//

//

//

# IV.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of November, 2018.

JAMES L. ROBART
United States District Judge